UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21213

JAMES SMITH,

      Plaintiff,

v.

CARNIVAL CORPORATION,
and SCOOTAROUND, INC.,

      Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, JAMES SMITH (hereinafter "SMITH"), through undersigned counsel, sues CARNIVAL CORPORATION, (hereinafter "CARNIVAL"), and SCOOTAROUND, INC. (hereinafter "SCOOTAROUND") (both hereinafter collectively referred to as "DEFENDANTS"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. SMITH seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. SMITH is *sui juris* and is a resident and citizen of the state of Georgia.

6. Plaintiff is entitled to a jury trial pursuant to *Leslie v. Carnival Corp.*, 22 So. 3d 561, 562 (Fla. 3d DCA 2008).

7. CARNIVAL is a citizen of the state of Florida and the nation of Panama.

8. CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

9. CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

     a.     Operated, conducted, engaged in, or carried on a business venture; and/or

     b.     Had an office or agency; and/or

     c.     Engaged in substantial activity; and/or

     d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

10. SCOOTAROUND is a citizen of the state of Florida.

11. At all times material, SCOOTAROUND was doing continuous and systematic business in the Southern District of Florida by operating a motorized scooter and handicap accessible equipment rental business which provided motorized scooters to CARNIVAL's passengers to enable them to move about the ship and in ports of call with greater ease.

12. SCOOTAROUND is a Florida corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing

business in Broward County, Florida, and who maintains its corporate headquarters and/or principal place of business in Broward County Florida.

13. SCOOTAROUND, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a.    Operated, conducted, engaged in, or carried on a business venture; and/or

   b.    Had an office or agency; and/or

   c.    Engaged in substantial activity; and/or

   d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

14. All condition precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

15. Hereinafter, the phrase, the "subject surface," refers to the surface in the area described in paragraph 21, and the phrase, the "subject scooter," shall include, but not be limited to, the scooter, the moving and turning mechanism, the tape on the scooter, and all other material pertaining thereto.

16. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject surface involved in SMITH'S incident.

17. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the CARNIVAL *Glory*.

18. At all times material hereto, SCOOTAROUND owned, and Defendants inspected, operated, maintained, managed, and/or controlled the subject scooter involved in SMITH's incident, and/or were responsible for doing so.

19.    SMITH'S incident occurred on or about January 24, 2024, while he was a fare paying passenger on CARNIVAL's vessel, the CARNIVAL *Glory*.

20.    At all times material hereto, SMITH was disabled and required the use of a mobility scooter, and therefore rented a SCOOTAROUND scooter from a SCOOTAROUND employee at the port.

21.    On or about January 24, 2024, between approximately 8:00-10:00 p.m., on the deck number 10, SMITH was using this rental scooter, and was backing out of a restaurant and trying to turn the scooter around. However, despite SMITH having requested an adequate newer type of scooter, the scooter was defective, was an older type of scooter that had tape on it, and it was difficult to move around or turn. As a result, when SMITH's scooter went through an unusually small and narrow doorway, and hit a lump on the floor surface that had a carpet over it while he was backing up (and while the ship was also rocking), he fell from his scooter.

22.    As a further result, SMITH sustained severe injuries that include, but are not limited to a fractured neck, pain, suffering, and other injuries.

23.    DEFENDANTS either knew or should have known of the dangerousness of the subject surface, scooter, and door, due to reasons that include, but are not limited to, the following:

   a.  SMITH's wife observed a CARNIVAL crew member in the immediate vicinity of the subject surface and door prior to and at the time of his incident, close enough that this crewmember was able to see the subject lump on the subject surface (which was visible to trained crewmembers who had training to watch out for dangers such as these, but not for laypeople such as SMITH), such that SMITH reasonably infers that this crew members was or should have been familiar with the wet condition of the subject surface.

b. Defendants also knew or should have know that the subject scooter was dangerous because it was old, worn out, had tape over it, and if they had done basic testing prior to providing to SMITH, they would have been able to notice that there was a problem with the steering such that it was dangerous to operate due to it's difficulty making turns.

c. Defendants participated in the installation and/or design of the subject surface, scooter, and door, or alternatively, Defendants approved of the subject surface, scooter, and door with their design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, scooter, and door, such that Defendants should have known of the design defects of the subject surface, scooter, and door before providing them for public use.

d. Prior to the subject incident, Defendants installed and/or refitted similar surfaces, scooters, and doors to make them less dangerous.

e. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject surface, scooter, and door including, but not limited to, prohibitions and/or recommendations against walking surfaces such as these surface having lumps such as those SMITH encountered, as well as against small and narrow doorways such as those SMITH was backing up through. CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

f.  Defendants knew or should have known of the danger of the subject surface, scooter, and door for reasons that include, but are not limited to, that it had possession of it for a period of time, that it was familiar with it, that Defendants knew had issues similar to those SMITH experienced, and/or Defendants knew or should have known of prior incidents/complaints involving this type of surface, scooter, and door's lack of adequate instructions/warnings regarding scooters, and/or these types of hazards, and/or other reasons. *See, e.g., Strong v. Carnival Corporation, et al.*, Case 1:19-cv-25247-MGC; *see also Rodriguez v. Carnival Corporation, et al.*, Case 1:10-cv-23416-CMA; *see also Conden v. Royal Caribbean Group, ltd, et al.*, 1:20-cv-22956-CMA.

g.  Moreover, DEFENDANTS knew or should have known of this risk-creating and/or dangerous condition for other reasons that will be revealed through discovery.

24.  At all times relevant, the subject surface, scooter, and door were unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

25.  The subject surface, scooter, and door lacked adequate safety features to prevent or minimize SMITH'S incident and/or injuries.

26.  These hazardous conditions was known, or should have been known, to DEFENDANTS in the exercise of reasonable care.

27.  These hazardous conditions existed for a period of time before the incident.

28.  At all times relevant, DEFENDANTS failed to adequately inspect the subject surface, scooter, and door for dangers, and DEFENDANTS failed to adequately warn SMITH of the dangers.

29.  At all times relevant, DEFENDANTS failed to maintain the subject surface, scooter, and door in a reasonably safe condition.

30. At all times relevant, DEFENDANTS had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

31. These conditions were neither open nor obvious to SMITH.

32. At all times relevant, DEFENDANTS participated in the design and/or approved the design of the subject surface, scooter, and door involved in SMITH'S incident.

33. At all times relevant, DEFENDANTS participated in the installation and/or approved the installation of the subject surface, scooter, and door involved in SMITH'S incident.

34. The crewmembers and employees of DEFENDANTS were in regular full-time employment of DEFENDANTS as salaried crewmembers.

35. DEFENDANTS' crewmembers, employees, and/or agents were subject to DEFENDANTS' and/or the ship's discipline and master's orders, and DEFENDANTS had the right to hire and fire their crewmembers, employees, and/or agents.

36. DEFENDANTS are directly responsible and liable for their actions and the actions of their crewmembers, employees, and/or agents.

37. The DEFENDANTS' crewmembers and other staff, including the medical staff, were employees and/or actual agents and/or apparent agents of DEFENDANTS, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

38. The crewmembers, employees, and/or agents were represented to SMITH and the ship's passengers as employees of DEFENDANTS through signs, documents, and/or uniforms. They were also paid a salary and/or hourly wage by DEFENDANTS. DEFENDANTS knew that they represented themselves to be employees of DEFENDANTS and allowed them to represent themselves as such. SMITH detrimentally relied on these representations as SMITH would not

have proceeded to use the subject scooter had SMITH believed they were not employees of DEFENDANTS.

## COUNT I
## <u>NEGLIGENT FAILURE TO REMEDY AGAINST CARNIVAL</u>

39.   SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

40.   CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

41.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject surface, scooter, and door to make sure they were reasonably safe for the use and enjoyment of its passengers.

42.   At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to SMITH and were negligent by failing to adequately remedy the subject surface, scooter, and door to make sure they were reasonably safe, such that SMITH's incident occurred.

43.   CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the reasons discussed in paragraph 23 of the instant Complaint.

44.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject surface and the vicinity to make sure the subject surface and the vicinity were reasonably safe.

45.   CARNIVAL'S negligence proximately caused SMITH great bodily harm in that, but for CARNIVAL'S negligence, SMITH'S injuries would not have occurred.

46. As a result of CARNIVAL'S negligence, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

47. The losses are permanent and/or continuing in nature.

48. SMITH suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## <u>NEGLIGENT FAILURE TO REMEDY AGAINST SCOOTAROUND</u>

49. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

50. SCOOTAROUND owed a duty to exercise reasonable care under the circumstances for the safety of its customers/patrons.

51. This duty includes, but is not limited to, the duty to provide its customers/patrons reasonable care by adequately remedying the subject scooter.

52.     At all times material, SCOOTAROUND, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with SCOOTAROUND, breached the duty of reasonable care owed to SMITH and were negligent by failing to adequately remedy the subject scooter, and which thereby caused SMITH's incident, and to suffer her injuries previously described.

53.     SCOOTAROUND either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 23 of the instant Complaint.

54.     Moreover, these risk-creating and/or dangerous conditions were caused SCOOTAROUND's failure to adequately remedy the subject scooter.

55.     SCOOTAROUND's negligence proximately caused SMITH great bodily harm in that, but for SCOOTAROUND's negligence, SMITH's injuries would not have occurred.

56.     As a result of SCOOTAROUND's negligence, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

57.     The losses are permanent and/or continuing in nature.

58.     SMITH has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, SCOOTAROUND, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering,

disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITIONS AGAINST CARNIVAL**

59. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

60. At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including SMITH.

61. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to SMITH.

62. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

63. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to SMITH and was negligent by failing to warn SMITH of the dangerous conditions.

64. Furthermore, CARNIVAL knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in paragraph 23 of this Complaint.

65. The risk-creating and/or dangerous conditions were also created by CARNIVAL.

66. CARNIVAL failed to adequately ensure there was no dangerous condition that passengers needed to be warned of, and/or CARNIVAL failed to warn SMITH despite knowing of the danger.

67. These risk-creating and/or dangerous conditions existed for a period of time before the incident.

68. These risk-creating and/or dangerous conditions were neither open nor obvious to SMITH.

69. CARNIVAL'S breach was the cause in-fact of SMITH'S great bodily harm in that, but for CARNIVAL'S breach SMITH's injuries would not have occurred.

70. CARNIVAL'S breach proximately caused SMITH great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

71. As a result of CARNIVAL'S negligence, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

72. The losses are permanent and/or continuing in nature.

73. SMITH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and

treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV AGAINST SCOOTAROUND
## <u>NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITIONS</u>

74. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

75. At all times relevant, SCOOTAROUND owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including SMITH.

76. Such duty includes, but is not limited to, the duty that SCOOTAROUND owes to warn passengers of any dangers that it knew or should have known were not open and obvious to SMITH.

77. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

78. At all times material, SCOOTAROUND, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with SCOOTAROUND, breached the duty of reasonable care owed to SMITH and was negligent by failing to warn SMITH of the dangerous conditions.

79. Furthermore, SCOOTAROUND knew or should have known of this risk-creating and/or dangerous condition for the reasons discussed in paragraph 23 of this Complaint.

80. The risk-creating and/or dangerous conditions were also created by SCOOTAROUND.

81. SCOOTAROUND failed to adequately ensure there was no dangerous condition that

passengers needed to be warned of, and/or SCOOTAROUND failed to warn SMITH despite knowing of the danger.

82.    The risk-creating and/or dangerous conditions existed for a period of time before the incident.

83.    Thes risk-creating and/or dangerous conditions were neither open nor obvious to SMITH.

84.    SCOOTAROUND'S breach was the cause in-fact of SMITH'S great bodily harm in that, but for SCOOTAROUND'S breach SMITH's injuries would not have occurred.

85.    SCOOTAROUND'S breach proximately caused SMITH great bodily harm in that the incident that occurred was a foreseeable result of SCOOTAROUND'S breach.

86.    As a result of SCOOTAROUND'S negligence, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

87.    The losses are permanent and/or continuing in nature.

88.    SMITH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, SCOOTAROUND, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs,

loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT SURFACE AND THE VICINITY AGAINST CARNIVAL**

89.    SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

90.    At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to SMITH, not to permit dangerous conditions to be in places where they could harm passengers, such as the subject surface and door, which were unreasonably lumpy and small/narrow, as well as to design and install reasonable safeguards.

91.    At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which SMITH was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject surface and the vicinity.

92.    At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the CARNIVAL *Glory*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to SMITH, to design, install and/or approve of the subject surface and door without any defects.

93.    At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject surface and door involved in SMITH'S incident,

which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

94. CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject surface and the vicinity.

95. CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the CARNIVAL *Glory*, during the new build process.

96. CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

97. CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

98. However, CARNIVAL permitted the subject surface and door to be unreasonably lumpy and small/narrow, without correcting this design deficiencies, and CARNIVAL did not design and install reasonable safeguards.

99. Furthermore, CARNIVAL knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in paragraph 23 of this Complaint.

100. The design flaws that made the subject surface and the vicinity involved in SMITH'S incident unreasonably dangerous were the direct and proximate cause of SMITH'S injuries.

101. CARNIVAL is liable for the design flaws of the vessel, including of the subject surface and door involved in SMITH'S incident, which it knew or should have known of.

102. CARNIVAL failed to correct and/or remedy the defective condition, despite the fact that CARNIVAL knew or should have known of the danger(s).

103. CARNIVAL'S breach was the cause in-fact of SMITH'S great bodily harm in that, but for CARNIVAL'S breach SMITH's injuries would not have occurred.

104. CARNIVAL'S breach proximately caused SMITH great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

105. As a result of CARNIVAL'S negligence, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

106. The losses are permanent and/or continuing in nature.

107. SMITH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
## CLAIM OF STRCT LIABILITY AGAINST SCOOTAROUND

108. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-38, as if set forth herein.

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 17 of 20**

109.  At all times material hereto, SCOOTAROUND owed a duty to SMITH not to permit hazards to harm him, such as those involving the subject scooter, as well as to design and install reasonable safeguards.

110.  At all times material hereto, SCOOTAROUND approved of the design of the subject scooter and put it into the channels of trade.

111.  At all times material hereto, SCOOTAROUND knew or had reason to know that the subject scooter involved in SMITH's incident was unreasonably and inherently dangerous.

112.  SCOOTAROUND should have known of the dangerous conditions of the subject scooter through reasonably inspecting it, and if it did not know of these dangerous conditions, this was because it failed to adequately inspect it.

113.  In addition, SCOOTAROUND either knew or should have known of these dangerous conditions, due to reasons that include, but are not limited to, prior substantially similar incidents, complaints of incidents, complaints of these conditions, the length of time that these conditions existed, because these conditions violated relevant safety standards, and/or for other reasons, including, but not limited to, reasons that will be revealed during discovery.

114.  However, SCOOTAROUND permitted the subject scooter to have these dangerous deficiencies without correcting them, and did not install reasonable safeguards.

115.  The design flaws that made the subject scooter involved in SMITH's incident inherently and unreasonably dangerous was the direct and proximate cause of SMITH's injuries.

116.  SCOOTAROUND is strictly liable for the design flaws of the subject scooter scooter.

117.  SCOOTAROUND failed to correct and/or remedy the defective conditions despite the fact that it knew or should have known their danger.

118.  SCOOTAROUND knew or should have known that SMITH was going to use the

subject scooter without inspection for defects and without adequate instruction, warning, and/or other assistance. SMITH was a foreseeable user of the subject scooter. Even if SMITH had inspected the scooter, SCOOTAROUND knew that SMITH was a layperson who would not have known the mechanics of the subject scooter and would not have had specialized knowledge of scooter mechanics and would not know what it looks like when a scooter is unable to turn adequately enough until after an incident occurred. It was reasonable that SMITH would have trusted the scooter provided to SMITH was in safe, good working order.

119. The product in question (the subject scooter) was being used in the intended manner at the time of the injury to SMITH. The scooter failed in its normal and ordinary use in that it was difficult to move around or turn.

120. The product in question (the subject scooter) was defective when it was provided, leased, or bailed to SMITH. SMITH was thrown off his scooter under normal use and conditions. These defects made the scooter unreasonably dangerous to SMITH who was the user of the product.

121. As a direct and proximate result of the defect(s) in the scooter as set forth above, SMITH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

122. The losses are permanent and/or continuing in nature.

123. SMITH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, SCOOTAROUND, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, JAMES SMITH, demands trial by jury on all issues so triable.

**Dated:** April 1, 2024.

Respectfully submitted,

<u>/s/ Spencer Aronfeld</u>
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for SMITH***