UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21213

JAMES SMITH,

 Plaintiff,

v.

CARNIVAL CORPORATION,

 Defendant.

_____/

## FIFTH AMENDED COMPLAINT FOR DAMAGES
## AND DEMAND FOR TRIAL BY JURY

Plaintiff, JAMES SMITH (hereinafter "SMITH"), through undersigned counsel, sues CARNIVAL CORPORATION (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

### PARTIES AND JURISDICTION

1. SMITH seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. SMITH is *sui juris* and is a resident and citizen of the state of Georgia.

6. Plaintiff is entitled to a jury trial pursuant to *Leslie v. Carnival Corp.*, 22 So. 3d 561, 562 (Fla. 3d DCA 2008).

7. CARNIVAL is a citizen of the state of Florida and the nation of Panama.

8. CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

9. CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in, or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

10. All condition precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

11. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject medical center involved in SMITH'S incident.

12. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the CARNIVAL *Glory*.

13. SMITH'S incident occurred on or about January 24, 2024, while he was a fare paying passenger on CARNIVAL's vessel, the CARNIVAL *Glory*.

14.     CARNIVAL advertises on its website that "Should you need medical assistance during your stay on board, the medical staff is available 24 hours a day. Our shipboard medical centers meet or exceed the Medical Facilities Guidelines established by the International Council of Cruise Lines and the American College of Emergency Physicians. The medical staff is from the fields of Emergency Medicine and/or Family Practice and is certified in Advanced Cardiac Life Support."

15.     SMITH suffered a neck and spinal cord injury during the subject cruise, the shipboard physician came to the scene and applied a cervical collar to treat his neck injury, and SMITH was taken to the ship's medical center. However, while he was being treated there. This collar was then removed after a cervical x-ray without the benefit of more definitive diagnostic testing, and despite SMITH'S persistent neurological symptoms to the right hand and right leg. Therefore, CARNIVAL provided SMITH with negligent medical care that did not meet, let alone exceed, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians.

16.     As a result of the removal of the neck collar by the ship's medical staff, SMITH suffered injuries, including, but not limited to, aggravation of his spinal cord injury, subsequent paralysis, pulmonary embolism, acute hypoxic respiratory failure, acute deep vein thrombosis, microcytic anemia, a complicated UTI, multiple subsegmental pulmonary embolism, enterococcus UTI, chronic systolic heart failure, chronic atrial fibrillation, decubitus ulcers, hyponatremia, hypoalbuminemia, neurogenic bladder, H/O stroke, subtherapeutic INR, S/P MVR, debility, hypomagnesemia, quadriplegia, multiple types of sepsis, multiple wounds of skin, encephalopathy, osteomyelitis of multiple sites, anticoagulated, hypotension, pacemaker, sacral decubitus ulcer, severe sepsis, double pneumonia, abnormal CXR, mucus plugging of bronchi, acute respiratory failure with hypoxia, paralysis, numbness, bilateral arm weakness, a C-spine fracture with associated spinal cord injury at the C4-5 level, a displaced fracture to L patella and

fibula, and had to have a C4-C5 laminectomy, C3-C6 posterior segmental fusion, surgical debridement, mid-line placement, and surgery excision and debridement, loss of ability to speak, and his need for emergent spinal surgery would have been prevented.

17. CARNIVAL's shipboard medical staff were in regular full-time employment of CARNIVAL as salaried crewmembers.

18. CARNIVAL'S shipboard medical staff were subject to CARNIVAL'S and/or the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its shipboard medical staff.

19. CARNIVAL is directly responsible and liable for the actions and the inactions of its shipboard medical staff.

20. CARNIVAL'S crewmembers and other staff, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

21. CARNIVAL's shipboard medical staff were represented to SMITH and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. They were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that they represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. SMITH detrimentally relied on these representations as SMITH would not have proceeded on the subject cruise had SMITH believed they were not employees of CARNIVAL.

**COUNT I**
**VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

22. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-21, as if set forth herein.

23. CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

24. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

25. At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

26. CARNIVAL is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

27. CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

28. CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

29. CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

30. CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

31. CARNIVAL'S marketing materials described the medical center in proprietary language.

32. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

33. CARNIVAL provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

34. At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

a) SMITH suffered a neck and spinal cord injury during the subject cruise, the shipboard physician came to the scene and applied a cervical collar to treat his neck injury, and SMITH was taken to the ship's medical center. However, while he was being treated there. This collar was then removed after a cervical x-ray without the benefit of more definitive diagnostic testing, and despite SMITH'S persistent neurological symptoms to the right hand and right leg. Therefore, CARNIVAL provided SMITH with negligent medical care that did not meet, let alone exceed, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians.

35. As a result of the removal of the neck collar by the ship's medical staff, SMITH suffered injuries, including, but not limited to, aggravation of his spinal cord injury, subsequent paralysis, pulmonary embolism, acute hypoxic respiratory failure, acute deep vein thrombosis, microcytic anemia, a complicated UTI, multiple subsegmental pulmonary embolism, enterococcus UTI, chronic systolic heart failure, chronic atrial fibrillation, decubitus ulcers, hyponatremia, hypoalbuminemia, neurogenic bladder, H/O stroke, subtherapeutic INR, S/P MVR, debility,

hypomagnesemia, quadriplegia, multiple types of sepsis, multiple wounds of skin, encephalopathy, osteomyelitis of multiple sites, anticoagulated, hypotension, pacemaker, sacral decubitus ulcer, severe sepsis, double pneumonia, abnormal CXR, mucus plugging of bronchi, acute respiratory failure with hypoxia, paralysis, numbness, bilateral arm weakness, a C-spine fracture with associated spinal cord injury at the C4-5 level, a displaced fracture to L patella and fibula, and had to have a C4-C5 laminectomy, C3-C6 posterior segmental fusion, surgical debridement, mid-line placement, and surgery excision and debridement, loss of ability to speak, and his need for emergent spinal surgery would have been prevented.

36.   Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

37.   CARNIVAL is therefore vicariously liable for all injuries and damages sustained by SMITH as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

38.   At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care, including, but not limited to, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians, which CARNIVAL advertises that its medical care meets or exceeds.

39.   The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused SMITH great bodily harm in that, but for CARNIVAL's negligence, SMITH'S injuries would not have occurred and/or said injuries would have been substantially lessened.

40. CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

41. As a direct and proximate result of the medical negligence as set forth above, SMITH has suffered severe bodily injuries and/or aggravations resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

42. The losses are permanent and/or continuing in nature.

43. SMITH has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT II**
**<u>APPARENT AGENCY FOR THE ACTS OF THE SHIP'S MEDICAL STAFF</u>**

44. SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-21, as if set forth herein.

45. At all times material hereto, the ship's medical staff and regular crew represented to

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 8 of 15**

SMITH and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in that:

a.  The medical staff wore the ship's uniform;

b.  The medical staff ate with the ship's crew;

c.  The medical staff was under the commands of the ship's officers;

d.  The medical staff worked in the ship's medical department;

e.  The medical staff was paid a salary by CARNIVAL;

f.  The medical staff worked aboard the vessel;

g.  The medical staff spoke to SMITH as though they had authority to do so by CARNIVAL.

46.  In addition, CARNIVAL further represented to SMITH that the vessel's medical staff and regular crew were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the medical center in proprietary language, including language such as the "*Glory*'s Medical Center," "our infirmary," and/or "our medical center," and through encouraging SMITH to make use of "its" infirmary/medical center if SMITH was in need of medical attention.

47.  Furthermore, at no time did CARNIVAL represent to SMITH in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew were not agents or employees of CARNIVAL.

48.  At all material times, SMITH reasonably relied on the representations to SMITH'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of CARNIVAL.

49.  It was reasonable to believe that the medical staff and regular crew were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the

medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

50. This reasonable reliance was detrimental because it delayed SMITH from receiving proper medical treatment and/or SMITH would not have gone on the subject cruise with CARNIVAL had SMITH known that the medical staff and regular crew on the ship were not CARNIVAL'S agents.

51. CARNIVAL is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

52. CARNIVAL had a duty to provide SMITH with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide SMITH with reasonable care under the circumstances.

53. SMITH'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

a) SMITH suffered a neck and spinal cord injury during the subject cruise, the shipboard physician came to the scene and applied a cervical collar to treat his neck injury, and SMITH was taken to the ship's medical center. However, while he was being treated there. This collar was then removed after a cervical x-ray without the benefit of more definitive diagnostic testing, and despite SMITH'S persistent neurological symptoms to the right hand and right leg. Therefore, CARNIVAL provided SMITH with negligent medical care that did not meet, let alone exceed, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians.

54. As a result of the removal of the neck collar by the ship's medical staff, SMITH suffered injuries, including, but not limited to, aggravation of his spinal cord injury, subsequent paralysis, pulmonary embolism, acute hypoxic respiratory failure, acute deep vein thrombosis,

microcytic anemia, a complicated UTI, multiple subsegmental pulmonary embolism, enterococcus UTI, chronic systolic heart failure, chronic atrial fibrillation, decubitus ulcers, hyponatremia, hypoalbuminemia, neurogenic bladder, H/O stroke, subtherapeutic INR, S/P MVR, debility, hypomagnesemia, quadriplegia, multiple types of sepsis, multiple wounds of skin, encephalopathy, osteomyelitis of multiple sites, anticoagulated, hypotension, pacemaker, sacral decubitus ulcer, severe sepsis, double pneumonia, abnormal CXR, mucus plugging of bronchi, acute respiratory failure with hypoxia, paralysis, numbness, bilateral arm weakness, a C-spine fracture with associated spinal cord injury at the C4-5 level, a displaced fracture to L patella and fibula, and had to have a C4-C5 laminectomy, C3-C6 posterior segmental fusion, surgical debridement, mid-line placement, and surgery excision and debridement, loss of ability to speak, and his need for emergent spinal surgery would have been prevented.

55. At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care, including, but not limited to, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians, which CARNIVAL advertises that its medical care meets or exceeds.

56. The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused SMITH great bodily harm in that, but for CARNIVAL's negligence, SMITH'S injuries would not have occurred and/or said injuries would have been substantially lessened.

57. CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

58.    As a direct and proximate result of the medical negligence as set forth above, SMITH has suffered severe bodily injuries and/or aggravations resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

59.    The losses are either permanent or continuing in nature.

60.    SMITH has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT III
### ASSUMPTION OF DUTY FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

61.    SMITH hereby adopts and re-alleges each and every allegation in paragraphs 1-21 as if set forth herein.

62.    CARNIVAL owed SMITH the duty to exercise reasonable care under the circumstances for the safety of its passengers.

63.    Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

64.   CARNIVAL elected to discharge this duty by having SMITH seen by its own ship's physicians and/or other crew members.

65.   As such, CARNIVAL voluntarily assumed a duty for the benefit of SMITH to use reasonable care in the provision of medical services to SMITH.

66.   At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

a)  SMITH suffered a neck and spinal cord injury during the subject cruise, the shipboard physician came to the scene and applied a cervical collar to treat his neck injury, and SMITH was taken to the ship's medical center. However, while he was being treated there. This collar was then removed after a cervical x-ray without the benefit of more definitive diagnostic testing, and despite SMITH'S persistent neurological symptoms to the right hand and right leg. Therefore, CARNIVAL provided SMITH with negligent medical care that did not meet, let alone exceed, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians.

67.   As a result of the removal of the neck collar by the ship's medical staff, SMITH suffered injuries, including, but not limited to, aggravation of his spinal cord injury, subsequent paralysis, pulmonary embolism, acute hypoxic respiratory failure, acute deep vein thrombosis, microcytic anemia, a complicated UTI, multiple subsegmental pulmonary embolism, enterococcus UTI, chronic systolic heart failure, chronic atrial fibrillation, decubitus ulcers, hyponatremia, hypoalbuminemia, neurogenic bladder, H/O stroke, subtherapeutic INR, S/P MVR, debility, hypomagnesemia, quadriplegia, multiple types of sepsis, multiple wounds of skin, encephalopathy, osteomyelitis of multiple sites, anticoagulated, hypotension, pacemaker, sacral

decubitus ulcer, severe sepsis, double pneumonia, abnormal CXR, mucus plugging of bronchi, acute respiratory failure with hypoxia, paralysis, numbness, bilateral arm weakness, a C-spine fracture with associated spinal cord injury at the C4-5 level, a displaced fracture to L patella and fibula, and had to have a C4-C5 laminectomy, C3-C6 posterior segmental fusion, surgical debridement, mid-line placement, and surgery excision and debridement, loss of ability to speak, and his need for emergent spinal surgery would have been prevented.

68. At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care, including, but not limited to, the standards of the International Council of Cruise Lines and the American College of Emergency Physicians, which CARNIVAL advertises that its medical care meets or exceeds.

69. The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused SMITH great bodily harm in that, but for CARNIVAL's negligence, SMITH'S injuries would not have occurred and/or said injuries would have been substantially lessened.

70. CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

71. As a direct and proximate result of the medical negligence as set forth above, SMITH has suffered severe bodily injuries and/or aggravations resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of SMITH'S vacation, cruise, and transportation costs.

72. The losses are permanent and/or continuing in nature.

73. SMITH has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, JAMES SMITH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that SMITH will suffer and incur in the future, as a result of SMITH's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of SMITH'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, JAMES SMITH, demands trial by jury on all issues so triable.

**Dated:** January 15, 2025.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for SMITH*

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**