UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21213

JAMES SMITH,

     *Plaintiff*,

v.

CARNIVAL CORPORATION,

     *Defendant*.

                        /

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON MEDICAL CAUSATION**

Defendant, Carnival Corporation ("Defendant"), by and through undersigned counsel, hereby files this Motion for Summary Judgment on Medical Causation seeking dismissal of all claims brought by Plaintiff against Carnival pursuant to Federal Rule of Civil Procedure 56 and Local Rule for the United States District Court for the Southern District of Florida 56.1, and in support thereof, states as follows:

## **INTRODUCTION**

This is a personal injury action in which Plaintiff, James Smith, now alleges medical negligence against Carnival for treatment he received while aboard the Carnival *Glory*. As the Court is aware, this claim began as a complaint that included allegations that Carnival and another party (Scootaround, Inc.) were negligent in causing Plaintiff's motorized scooter to fall over, injuring him. [D.E. 1].[1] There have been five (5) amended complaints since. [*See* D.E. 15, 29, 38, 84, 97, respectively]. Plaintiff's Fifth Amended Complaint, the current operative Complaint, alleges three claims against Carnival: Count I – Vicarious Liability Against Carnival for the

---

[1] Plaintiff has since resolved his claims against the scooter rental company, Scootaround, Inc. [D.E. 103]

Negligence of the Ship's Medical Staff; Count II – Apparent Agency for the Acts of the Ship's Medical Staff; and Count III – Assumption of Duty for the Negligence of the Ship's Medical Staff. [D.E. 97].

Plaintiff's current claims against Carnival stem from an incident that occurred on or about January 23, 2024, shortly before 9:00 PM, when he fell from his scooter while navigating out of a restaurant on board the ship. [D.E. 1, ¶22]. Prior to the incident alleged in this lawsuit, Plaintiff suffered a stroke in or around 2015 and had resulting left side weakness.[2]  Plaintiff alleges that as a result of the incident on board the *Glory,* he "suffered a neck and spinal cord injury" and resulting paraplegia. [D.E. 97, ¶15]. The day after his fall, Plaintiff was medically disembarked to the nearest hospital, Hospiten Montego Bay in Jamaica, and from there he was air evacuated to Jackson Memorial Hospital in Miami.[3]

In his sworn interrogatory answers, Plaintiff describes the alleged incident causing his injuries as follows:

> On or about January 24, 2024[4], between approximately 8:00-10:00 p.m., on Deck 10 of the Carnival *Glory,* Plaintiff attempted to exit the restaurant on his rental scooter. After mounting the scooter, Plaintiff attempted to back out and turn around to exit through the narrow restaurant doorway, when suddenly, the scooter drove over a bump on the ground, causing Plaintiff to lose control and fall onto his left side. Despite his efforts, Plaintiff was unable to regain control of the scooter and stop himself from falling. As a result, he hit his head on the wall. Plaintiff pleaded for help and was complaining of severe neck pain ….[5]

---

[2] Carnival's Statement of Undisputed Material Facts at ¶3 (hereinafter, "SUMF").

[3] SUMF at ¶ 18.

[4] According to Carnival's records, the actual date of Plaintiff's fall was January 23, 2024. SUMF at ¶ 4, n. 1.

[5] SUMF at ¶ 4.

Plaintiff initially alleged Carnival was liable only for general negligence, claiming there was a bump in the floor that caused his scooter to tip over. [D.E. 1, ¶21]. Three months after filing his initial Complaint, Plaintiff added medical negligence claims against Carnival relating to the medical treatment he received in the ship's medical center. [Second Am. Complaint, D.E. 29, ¶ 136]. In his Fourth Amended Complaint, Plaintiff withdrew all general negligence causes of action against Carnival, leaving only his claims of medical negligence. [Fourth Am. Complaint, D.E. 84].

Discovery closed on April 11, 2025. [D.E. 104]. The record evidence—further detailed in Carnival's Statement of Material Facts—establishes the following undisputed timeline of events. When Plaintiff fell, he felt a "crack" in his neck.[6] Afterwards, a witness to the event helped return Plaintiff to a sitting position on his motorized scooter.[7] Carnival's medical staff arrived at the location of his fall, rendered immediate treatment and placed a cervical collar on his neck. [D.E. 97, ¶15][8]. Plaintiff was taken to the ship's medical center where he was examined by the shipboard doctor and an X-ray of his neck was administered. [D.E. 97, ¶15][9]. At approximately 11 P.M. on January 23, after the X-ray results were obtained, Plaintiff's cervical collar was removed. [D.E. 97, ¶15][10]. Some hours later, at approximately 4:40 A.M. on January 24, Plaintiff reported loss of sensation in his right side to the ship medical staff.[11]

Plaintiff's current Complaint alleges the following:

> [PLAINTIFF] suffered a neck and spinal cord injury during the subject cruise, the shipboard physician came to the scene and applied a cervical collar to treat his neck injury, and [PLAINTIFF]

---

[6] SUMF at ¶ 7.

[7] SUMF at ¶ 6.

[8] *See also* SUMF at ¶ 9.

[9] *See also* SUMF at ¶ 10.

[10] *See also* SUMF at ¶ 11.

[11] SUMF at ¶ 16.

> was taken to the ship's medical center. However, while he was being treated there. This collar was then removed after a cervical x-ray ….

[D.E. 97, ¶ 34]. Plaintiff now alleges that "[a]s a result of the removal of the neck collar by the ship's medical staff," Carnival is liable for all of his alleged injuries and subsequent medical conditions as a result of the alleged subsequent negligence. [D.E. 97, ¶ 35]. These injuries and medical conditions include:

> … aggravation of his spinal cord injury, subsequent paralysis, pulmonary embolism, acute hypoxic respiratory failure, acute deep vein thrombosis, microcytic anemia, a complicated UTI, multiple subsegmental pulmonary embolism, enterococcus UTI, chronic systolic heart failure, chronic atrial fibrillation, decubitus ulcers, hyponatremia, hypoalbuminemia, neurogenic bladder, H/O stroke, subtherapeutic INR, S/P MVR, debility, hypomagnesemia, quadriplegia, multiple types of sepsis, multiple wounds of skin, encephalopathy, osteomyelitis of multiple sites, anticoagulated, hypotension, pacemaker, sacral decubitus ulcer, severe sepsis, double pneumonia, abnormal CXR, mucus plugging of bronchi, acute respiratory failure with hypoxia, paralysis, numbness, bilateral arm weakness, a C-spine fracture with associated spinal cord injury at the C4-5 level, a displaced fracture to L patella and fibula, and had to have a C4-C5 laminectomy, C3-C6 posterior segmental fusion, surgical debridement, mid-line placement, and surgery excision and debridement, loss of ability to speak, and his need for emergent spinal surgery would have been prevented.

[D.E. 97, ¶ 35]. These are the *same injuries* that Plaintiff initially identified as having resulted from the fall from the motorized scooter.[12] Specifically, in his sworn interrogatory answers, Plaintiff claimed his injuries **"were caused by the incident because Plaintiff hit his head against the wall."** *Id.* (emphasis added).

The undisputed record evidence establishes that Plaintiff fell from his scooter as a result of his own actions , which may have included backing his scooter directly into a wall, through no

---

[12] SUMF at ¶ 34.

fault of Carnival or anyone else.[13]  Moreover, Plaintiff has withdrawn all claims against Carnival for this incident. [D.E. 84]. Despite his earlier claims that his injuries stemmed from the initial fall, Plaintiff now alleges the removal of his cervical collar while he remained immobile in the medical center bed was the sole cause of all the above injuries and medical conditions—not the initial injury he suffered to his neck when he fell from his scooter and originally identified as the cause of his injuries. [D.E. 97, ¶ 35].

As explained below, the undisputed evidence in this case shows that Plaintiff cannot support the fundamental medical causation element of what he now claims—that the removal of the neck collar several hours after his incident played any role in his current physical condition or injuries. Plaintiff's medical causation expert, Dr. Nicholas Suite, provides only speculation and assumptions that the removal of the collar caused Plaintiff's paralysis through an *ipso facto* analysis. Dr. Suite comes to this conclusion because, as he opines, there is no other reason paralysis could have occurred, discounting any alternative causes because he made no search or examination for alternative causes, and, it appears, ignored Plaintiff's own sworn interrogatories. Thus, Plaintiff provides no competent expert opinion that Carnival's alleged negligence in removing the collar is the cause in fact or proximate cause of his paralysis and/or other alleged injuries. Rather, the cause of Plaintiff's paralysis was the initial fracture of his cervical spine as a result of the fall from the motorized scooter. More specifically, Plaintiff's medical records show that he suffered a hematoma from the neck fracture which gradually compressed his spinal column causing total paralysis.

For the foregoing reasons, and as explained in more detail herein, summary judgment should be granted in Carnival's favor.

---

[13] SUMF at ¶ 8.

5

## LAW AND ARGUMENT

### I.    Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories and admissions that demonstrate the absence of a genuine issue of material fact. *Id*. Once the party moving for summary judgment demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "come forward with specific facts that will establish a genuine issue for trial." *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997). Indeed, summary judgment is the "put up or shut up moment in the life of a case." *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F.3d 605, 612-13 (7th Cir. 2008).

"[T]he existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; 'the requirement is that there be no genuine issue of material fact.'" *Weiner v. Carnival Cruise Lines,* No. 11-cv-22516, 2012 U.S. Dist. LEXIS 151395, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2023) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A mere "scintilla" of evidence supporting the non-movant's

6

positions is insufficient, and there must be sufficient evidence such that a jury could reasonably find for the nonmoving party. *Allen,* 121 F.3d at 646; *see also LaChance v Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); *Hubbert v. Carnival Corp.*, 2013 WL 48006908 at *2 (S.D. Fla. Sept. 9, 2013) (granting summary judgment where plaintiff failed to provide the court with any evidence other than their own conclusory assertions). Mere conclusory allegations without specific supporting facts have no probative value when deciding a motion for summary judgment. *Evers v. General Motors Corporation*, 770 F.2d 984, 986 (11th Cir. 1985); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "Summary judgment procedure is properly regarded, not as a disfavored procedural shortcut, but rather as an integral part of the federal rules of the whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 323.

## II. Maritime Law Governs This Personal Injury Action

General maritime law governs personal injury actions by cruise passengers. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1263-64 (11th Cir. 2020) (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)). Alleged maritime torts occurring on navigable waters and bearing a significant relationship to traditional maritime activities are governed by maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). It is undisputed that Plaintiff's alleged incident occurred while Plaintiff was onboard the CARNIVAL *Glory*, which was in navigable waters. [D.E. 97, ¶13]. Accordingly, maritime law applies to the instant action.

## III. Plaintiff Cannot Meet His Burden to Establish Medical Causation

### A. Medical Negligence Causation

Summary judgment should be granted because Plaintiff cannot establish that the alleged negligence of Carnival's medical staff was the cause of his paraplegia and/or other alleged medical

injuries/conditions. "Succeeding on a medical malpractice claim under federal maritime law requires establishing that: (1) the defendant had a duty to protect the plaintiff from a specific injury; (2) defendant breached that duty; (3) *the breach was the actual and proximate cause of the plaintiff's injury*; and (4) the plaintiff suffered damages." *Landivar v. Celebrity Cruises, Inc.*, 584 F. Supp. 3d 1150, 1159 (S.D. Fla. 2022) (emphasis added) (citing *Law v. Carnival Corp.*, No. 20-21105-Civ, 2021 U.S. Dist. LEXIS 137433, at *5 (S.D. Fla. July 23, 2021); *see also Gooding v. University Hospital Bldg., Inc.*, 445 So.2d 1015, 1018 (Fla. 1984) (under Florida law "[a] mere possibility of causation is not enough"). Carnival's motion is based on the third required element: that the alleged breach was the actual and proximate cause of the plaintiff's injury.  Even assuming Carnival was negligent in breaching the standard of care by removing the neck collar (which it is not), this decision played no role and was not the actual or proximate cause of Plaintiff's injury.

The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action. *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) ("Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [the] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment."). This Court has reasoned that "[s]ummary judgment is appropriate where expert medical causation is required and lacking." *Phillips v. Delta Air Lines*, No. 21-80413-CV, 2021 U.S. Dist. LEXIS 228639, at *7 (S.D. Fla. Nov. 30, 2021); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1322 (11th Cir. 1999) (affirming a grant of summary judgment on a negligence claim when expert testimony on causation was required and no admissible expert testimony existed).

"Only expert testimony can support a finding of medical causation if the causal connection between the breach and the harm is 'not readily observable or susceptible to evaluation by lay

8

persons.'" *Landivar*, 584 F. Supp. 3d at1159-60 (quoting *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1285 (S.D. Fla. 2019)); *see also Phillips v. Delta Air Lines,* No. 21-80413-CV, 2021 U.S. Dist. LEXIS 228639, at \*4-5 (S.D. Fla. Nov. 30, 2021) ("In a negligence action '[w]hen the causal link between alleged injuries and the incident at issue is not readily apparent to a lay person, expert medical testimony as to medical causation is typically required'") (quoting *Rivera v. Royal Caribbean Cruises Ltd.*, 711 F. A'ppx 952, 954 (11th Cir. 2017) (per curiam)).[14] A plaintiff alleging that medical negligence caused subsequent injury/complications "is a question not amenable to be answered by laypersons." *Landivar*, 584 F. Supp. 3d at1159-60.

### B.      Evidence Regarding Causation of Plaintiff's Paralysis

The evidence in the record in this case creates a detailed chronology of how Plaintiff eventually became paralyzed. Plaintiff's wife, Michele Smith, testified that after Plaintiff fell, he told her he hit his head and "felt a crack in his neck."[15] This aligns with Plaintiff's initial claim that his injuries were caused by the initial incident of him falling out of his scooter. Recall that Plaintiff answered in his interrogatories that his injuries—including his paralysis—**"were caused by the incident because Plaintiff hit his head against the wall."**[16]

Carnival's experts all conclude that Plaintiff's eventual paralysis was the result of his initial fall. Dr. Harold Keyserling, a board certified radiologist and neuroradiologist, found that in addition to the fracture of the cervical spine from the fall from the scooter, Plaintiff's imaging from Hospiten Montego Bay, taken on January 24, 2024 (the day after the incident and the day he was

---

[14] It bears noting that this legal principle is critical in establishing the irrelevance of Dr. Suite's "expert" testimony.  He is simply making a layperson *ipso facto* observation, not opining as to medical causation.

[15] SUMF ¶ 7.

[16] SUMF ¶ 32 (emphasis added).

medically disembarked), showed a spinal epidural hematoma (bleeding within the spinal canal) that was enlarged two days later on January 26, 2024.[17] As he explains in his report, "contrary to a fracture causing immediate SCI, [a hematoma] can cause a subacute SCI developing within hours."[18] This is so because the hematoma progressively compresses the spinal cord which can lead to SCI [spinal cord injury]. *Id.* Dr. Keyserling concluded that the hematoma, compounded by Plaintiff's other pre-existing health conditions, "support a diagnosis of delayed spinal cord injury due to spinal epidural hematoma." *Id.*

Dr. Andrew Zelby, a board certified neurosurgeon, similarly concluded that Plaintiff's paralysis "was due to the development of an anterior epidural hematoma from the fracture," compounded by Plaintiff's use of blood thinner medication due to his previous stroke.[19] Dr. Zelby explains in his report, "[b]ased on the medical facts and findings, it is much more likely than not that the gradual expansion of an anterior hematoma, which caused progressive spinal cord compression, resulted in Mr. Smith's delayed neurological deterioration. This neurological deterioration, as well as his current neurological condition, were not caused or contributed to by his management on board the ship." *Id.*

Finally, Dr. David Talan, a specialist in Emergency Medicine, also concluded that Plaintiff's "subsequent delayed development of right-sided weakness was likely related to sequalae of the original trauma, such as swelling of injured tissues and/or hemorrhage, to which he may have been predisposed because of anti-coagulation [blood thinners]."[20]

---

[17] SUMF ¶ 24.

[18] SUMF ¶ 25.

[19] SUMF ¶28.

[20] SUMF ¶ 30.

Thus, as outlined by Carnival's experts, the explanation for Plaintiff's paralysis is evidenced within his medical records; a hematoma that formed as a result of his fall out of his scooter, which occurred hours before the cervical collar was removed in the medical center and was caused by the fracture that occurred in the fall from the motorized scooter. That hematoma gradually and progressively compressed his spinal cord, causing his eventual paralysis. Conversely, Plaintiff's theory that the removal of the collar caused his paralysis and all resulting medical conditions is unsupported by any evidence or expert medical testimony.

C.      **Plaintiff's Theory of Causation is Unsupported by the Record**

Plaintiff's case against Carnival now solely relies on his allegation that the removal of his cervical collar was the cause of his paralysis and other alleged subsequent medical injuries and conditions. [D.E. 97, ¶ 34, 35]. However, Plaintiff cannot provide any competent expert testimony that establishes the causal connection between the removal of his collar and his paralysis that goes beyond mere speculation. Indeed, Plaintiff's medical experts do not even consider the initial fracture and resulting hematoma as a possible cause.  This is insufficient as a matter of law to meet Plaintiff's burden. *See Guerrero v. BP Expl. & Prod. Inc.*, No. 8:20-cv-0263-KKM-JSS, 2024 U.S. Dist. LEXIS 55792, at *27 (M.D. Fla. Mar. 20, 2024) (excluding a medical causation expert for failing to consider alternative causes and, consequently granting summary judgment because the plaintiff was thus without a causation expert); *see also Kellner v. NCL (Bah.), Ltd.*, No. 15-23002-CIV, 2016 U.S. Dist. LEXIS 111777, at *3 (S.D. Fla. Aug. 22, 2016), aff'd, 753 F. App'x 662 (11th Cir. 2018) ("Each element, including causation, is essential to Plaintiff's negligence claim.").

Plaintiff proffered several medical experts but only one, Dr. Nicholas Suite, opined that the removal of Plaintiff's cervical collar caused his paralysis. Dr. Suite's causation opinion is merely speculative and conclusory; and thus, is insufficient for Plaintiff to prove actual medical causation

11

in this case. First, Carnival seeks to exclude Dr. Suite's opinions as unreliable pursuant to *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 579 (1993).[21] If Carnival's motion is successful, Plaintiff has no medical causation expert, warranting summary judgment. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1248 (11th Cir. 2010) (holding that exclusion of the plaintiff's medical expert was a basis for granting summary judgment because the plaintiff had no other expert upon to establish causation and "this type of proof *requires* expert testimony") (emphasis in original); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (upholding district court grant of summary judgment based on exclusion of the plaintiff's causation expert under *Daubert* "[b]ecause causation is an essential element in [a] negligence claim, and [plaintiff] was unable to prove causation without the experts"). Notwithstanding, even if Dr. Suite is permitted to testify, his causation opinion is based entirely on speculation, and, more importantly, does not consider that the initial fracture and resulting hematoma was the actual medical cause of Plaintiff's paralysis. Thus, even in the best light, Dr. Suite offers no medical opinion to contradict the record evidence that indicates the actual medical cause of Plaintiff's condition.

Dr. Suite opines that the "removal of the surgical collar at 11:00 p.m. on January 23, 2024, when the X-ray of the cervical spine was assumed to be normal, even in the setting of new neurological deficits and complaints following a fall, was an action that contributed completely and directly to causing the quadriplegia that Mr. Smith must now live with."[22] Critically, however, Dr. Suite admitted in his deposition that removal of the cervical collar alone would not cause paralysis.[23] Specifically, he testified that "there's only one way to become paralyzed when you

---

[21] Carnival is contemporaneously filing a *Daubert* Motion to exclude the expert testimony of Dr. Suite regarding his opinions as to causation.

[22] SUMF ¶ 20.

[23] SUMF ¶ 22.

have a broken neck and it's not stabilized, and that is to move your neck, move your head, and do so in an unprotected fashion." *Id.* Consequently, he summarized his causation opinion as follows: "He fell. He had movement afterwards that he didn't have to move it. That's all I have to go on."[24] Thus, Dr. Suite's causation opinion relies entirely on his belief and assumption that Plaintiff's neck was moved after the removal of his cervical collar, while Plaintiff was immobile in the medical center bed. However, there is no evidence to support this theory.  A detailed look at the timeline of Plaintiff's incident and subsequent treatment demonstrates the clear evidentiary deficit in Dr. Suite's analysis. The following timeline is undisputed:

➢ Plaintiff falls from scooter shortly before 9:00 PM.[25]  A response team is dispatched, and Plaintiff's neck is immobilized with a neck collar.  He is placed on a stretcher and brought to the medical center.[26]

➢ Plaintiff reports to the medical center at 9:12 PM.[27]

➢ Spinal clearance completed and collar removed at 11:00 PM, while Plaintiff still had feeling/movement in the right side of his body.[28]

➢ Nurse noted Plaintiff's movement of right side at 12:10 AM on February 24, 2024.[29]

➢ Nurse noted Plaintiff not complaining of neck pain at 1:07 AM.[30]

---

[24] SUMF ¶ 21.

[25] SUMF ¶ 5.

[26] SUMF ¶ 9.

[27] SUMF ¶ 10.

[28] SUMF ¶ 11.

[29] SUMF ¶ 12.

[30] SUMF ¶ 13.

➤ Nurse noted Plaintiff was sleeping comfortably and still moving his right arm at 2:10 AM.[31]

➤ Nurse noted Plaintiff was sleeping comfortably at 4:10 AM.[32]

➤ Plaintiff first reports loss of sensation in right side at 4:40 a.m. [33]

Stated another way, there is no genuine factual dispute that between 11:00 PM (the time the cervical collar was removed) and 4:40 A.M., Plaintiff was resting in his bed with no reported loss of sensation in his right side and no movement of his neck.[34] There is no evidence that Plaintiff moved his neck on his own accord or had his neck moved by any person or external force at any time during the hours of 11:00 PM and 4:40 AM the next morning. Nor can Dr. Suite provide any supportable explanation for what specifically occurred during those hours that he claims caused Plaintiff's paralysis. Thus, his causation opinion is nothing more than speculation.

Indeed, in his deposition, Dr. Suite conceded that his opinion was based on speculation:[35]

> Q.  Okay. What happened to him between 11:00 p.m. and 4:40 a.m.?
>
> A.   Between that time, again, it would be speculation because no camera was on him. I was not there to watch him. Only the nurse was who was checking on him ascertained those findings. So we don't know what happened between the 11:00 p.m. and 4:40 a.m. to produce his paralysis, which was discovered around that time.

Merely speculating that something must have happened to cause Plaintiff's paralysis between the time the collar was removed and the time he reported the paralysis is insufficient to establish the necessary causation and survive summary judgment. *See Phillips v. Delta Air Lines*, No. 21-80413-

---

[31] SUMF ¶ 14.

[32] SUMF ¶ 15.

[33] SUMF ¶ 16.

[34] SUMF ¶ 17.

[35] SUMF ¶ 23.

CV, 2021 U.S. Dist. LEXIS 228639, at *8-9 (S.D. Fla. Nov. 30, 2021) (reasoning that Plaintiff cannot rely on mere speculation to meet her burden on summary judgment and that the "mere fact of an accident or a temporal relationship does not itself demonstrate that the claimed injury was *caused* by the accident") (emphasis in original).

Further, Dr. Suite failed to consider Dr. Keyserling, Dr. Zelby, or Dr. Talan's conclusions that Plaintiff's eventual total paralysis was a delayed development stemming from the original trauma of falling from the scooter, causing a hematoma that formed from the neck fracture that compressed his spinal cord. In fact, Dr. Suite did not consider any other alternative theory to his own, which is fatal to an expert opinion. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010) ("As other circuits have recognized, an expert 'must provide a reasonable explanation as to why he or she has concluded that [any alternative cause suggested by the defense] was not the sole cause' of the plaintiff's injury') (quoting *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009)) (internal citations omitted). Whereas there is evidence that supports Dr. Keyserling, Dr. Zelby, and Dr. Talan's opinions, there is no record evidence that supports Dr. Suite's causation opinion without rank speculation.

Accordingly, Plaintiff cannot establish the required medical causation, an essential element of his claim. The only expert opinion Plaintiff relies on to establish medical causation is based entirely on speculation of an event that there is no record evidence occurred. Summary judgment is thus warranted. *Poer v. Jefferson Cty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion"); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment

15

motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment") (emphasis in original).

### D.      Plaintiff's Remaining Medical Experts Cannot Prove Causation Either

The opinions of Plaintiff's remaining medical experts also do not establish medical causation; thus, Plaintiff cannot prove an essential element of his claim. Plaintiff's medical experts, including Dr. Suite, conclude in their respective reports that the removal of Plaintiff's collar fell below a reasonable standard for medical care. Assuming only for purposes of this motion this were true, Plaintiff still cannot prove Carnival's negligence was the cause of his injury.

In *Landivar v. Celebrity Cruises, Inc.*, 584 F. Supp. 3d 1150, 1160 (S.D. Fla. 2022), the plaintiff alleged that the ship's medical staff negligently failed to diagnose him with COVID-19, which caused him to suffer several complications from the illness. Plaintiff's medical expert testified that Celebrity's medical staff did not meet their duty of care because they failed to diagnose the plaintiff. *Id.* at *21. However, plaintiff's expert further testified that even if the medical staff had diagnosed plaintiff with COVID-19, their treatment would have been the same because there was no specific treatment at that time *Id.* at *22. Thus, the Court found that the failure to diagnose the plaintiff was not the *cause* of his subsequent complications because they would not have treated him any differently even if they had initially diagnosed him. Accordingly, the Court granted summary judgment in Celebrity's favor, finding that the plaintiff could not establish medical causation *Id.*

Here, Plaintiff cannot prove that the removal of his cervical collar *caused* his alleged injuries, just as the plaintiff in *Landivar* could not prove that the failure of the medical staff to diagnose him with COVID-19 caused his subsequent complications. Thus, Plaintiff cannot prove medical causation, regardless of Plaintiff's expert's opinions that the removal of Plaintiff's cervical

collar fell below a reasonable standard of medical care. Accordingly, summary judgment is proper as Plaintiff has failed to establish Carnival's alleged negligence caused his injuries, an essential element to his claim.

## CONCLUSION

Plaintiff simply cannot provide sufficient medical evidence to meet his burden that Carnival's alleged negligence proximately caused Plaintiff's injuries. Plaintiff can only provide speculation of medical causation which is insufficient to survive summary judgment. For the reasons stated herein, Carnival respectfully requests that this Honorable Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety with prejudice.

**WHEREFORE**, Carnival respectfully submits that this Honorable Court enter an Order finding that Carnival is entitled to summary judgment on all grounds and granting its Motion for Summary Judgment.

## REQUEST FOR HEARING

Carnival respectfully requests a hearing on the issues raised in this motion.

Dated: April 18, 2025
      Miami, Fl

                                      **Respectfully submitted,**

                                      ***/s/ Luis E. Llamas***
                                      LUIS E. LLAMAS (Fla. Bar No. 0089822)
                                      LAUREN S. ROSE (Fla. Bar No. 115743)
                                      JONES WALKER, LLP
                                      201 S. Biscayne Blvd, Suite 3000
                                      Miami, FL 33131
                                      Tel: (305) 679-5700
                                      llamas@joneswalker.com
                                      lrose@joneswalker.com

                                      L. ETIENNE BALART (LA Bar No. 24951)
                                      Admitted *Pro Hac Vice* [D.E. 110]

17

JONES WALKER, LLP
201 St. Charles Ave., Ste. 5100
New Orleans, LA 70170
ebalart@joneswalker.com

*/s/ Michael Drahos*
MICHAEL DRAHOS
(Fla. Bar No. 0617059)
WALTER COOPER JARNAGIN
(Fla. Bar No. 117767)
ASHLEY GENOESE
(Fla. Bar No. 1019357)
GRAY ROBINSON, P.A.
515 North Flagler Drive, Suite 650
West Palm Beach, FL 33401
Tel: 561-268-5727
Fax: 561-268-5745
Cooper.jarnagin@gray-robinson.com
Michael.drahos@gray-robinson.com
Ashley.genoese@gray-robinson.com
Lilia.parker@gray-robinson.com

*Counsel for Carnival*

18